No. 25-147

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

HENRY ALEXANDER TOWNSEND,

     Plaintiff-Appellant,

        v.

TROY BOWSER, Superintendent; JOHN RUMSEY, Security; NAIMA N.
CHAMBERS, STM, Lt.; CAMERON BAUER, STM; ANN AMSBERRY,
Supt.; GREGORY JONES, Office of Population Management; KEVIN
JACKSON, Assistant Supt. Security,

     Defendants-Appellees.

_____

APPELLEES' BRIEF
_____

Appeal from the United States District Court
for the District of Oregon
_____

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General
JOANNA HERSHEY
Senior Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
joanna.hershey@doj.oregon.gov

Attorneys for Appellees

_____
_____

# TABLE OF CONTENTS

STATEMENT OF THE CASE ..............................................................................1

    A.    District Court Jurisdiction ...............................................................2

    B.    Finality of Judgment and Appellate Court Jurisdiction ..................2

    C.    Timeliness of Appeal .......................................................................2

ISSUE PRESENTED FOR REVIEW ...................................................................2

SUPPLEMENTAL STATEMENT OF FACTS....................................................2

    A.    The jury found for defendants after hearing the following
        evidence..............................................................................................3

        1.    Plaintiff was assaulted three times by members of a
                prison gang while housed in Unit 6 of TRCI........................ 3

        2.    Plaintiff filed a grievance about his housing placement
                in response to the March 3 incident...................................... 6

        3.    Defendants testified at trial about their knowledge, or
                lack of knowledge, regarding threats to plaintiff's
                safety.................................................................................... 7

    B.    Plaintiff filed a renewed motion for judgment as a matter of
        law. ..................................................................................................11

SUMMARY OF ARGUMENT...........................................................................12

STANDARD OF REVIEW .................................................................................13

ARGUMENT......................................................................................................14

CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

## Cases Cited

*Bell v. Wolfish,*
  441 U.S. 520, 99 S. Ct. 1861 (1979) .......................................................15

*Berg v. Kinchloe,*
  794 F.2d 457 (9th Cir. 1986)...................................................................15

*Farmer v. Brennan,*
  511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) .........................14

*Harper v. City of Los Angeles,*
  533 F.3d 1010 (9th Cir. 2008)..................................................................13

*Hudson v. Palmer,*
  468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) .........................14

*Martin v. California Dept. of Veterans Affairs,*
  560 F.3d 1042 (9th Cir. 2009)..................................................................13

*Whitley v. Albers,*
  475 U.S. 312, 106 S. Ct. 1078 (1986) ......................................................15

## Constitutional and Statutory Provisions

28 U.S.C. § 1291...................................................................................2

28 U.S.C. § 1331...................................................................................2

28 U.S.C. § 1343(a)(3)...........................................................................2

42 U.S.C. § 1983..............................................................................1, 12

U.S. Const., Amend. VIII ................................................................1, 14

U.S. Const., Amend. XIV ......................................................................1

ii

## APPELLEES' BRIEF
_____

## STATEMENT OF THE CASE

Plaintiff, an adult in custody ("AIC") at the Oregon Department of Corrections and housed at the Two Rivers Correctional Institute ("TRCI"), filed an action pursuant to 42 U.S.C. § 1983 alleging two claims of deliberate indifference to his safety, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[1] (2-SER-11–18). He alleged that defendant-appellees (hereinafter "defendants") had failed to protect him from assault by prison gang members on March 3, 2018, and June 7, 2018, despite having received confidential information that he would be assaulted by the gang if placed in general population. Following a three-day trial, a jury found for defendants on both claims. (2-SER-32–33).

Plaintiff thereafter filed a renewed motion for judgment as a matter of law. (2-SER-19–27). The district court denied the motion and issued a judgment in favor of defendants. (1-SER-1–9). Plaintiff now appeals from that judgment, arguing that the district court erred by denying plaintiff's motion for judgment as a matter of law.

_____

[1] Plaintiff alleged other claims that were disposed of on summary judgment; because those claims are not subject to this appeal, defendants do not discuss them.

**A.** **District Court Jurisdiction**

The district court had jurisdiction over plaintiff's case under 28 U.S.C. §§ 1331 and 1343(a)(3).

**B.** **Finality of Judgment and Appellate Court Jurisdiction**

The district court entered final judgment in favor of all defendants on November 13, 2024.  (1-SER-9).  This court has jurisdiction under 28 U.S.C. § 1291.

**C.** **Timeliness of Appeal**

Plaintiff timely filed his notice of appeal on December 23, 2024.  (2-SER-34–60).

## ISSUE PRESENTED FOR REVIEW

Did the district court correctly deny plaintiff's renewed motion for judgment as a matter of law?

## SUPPLEMENTAL STATEMENT OF FACTS

Following a three-day trial, a jury found for defendants on all claims. Plaintiff then moved for judgment as a matter of law, which the trial court denied.  In accordance with the proper standard of review, the following facts are summarized in the light most favorable to defendants.

3

**A.  The jury found for defendants after hearing the following evidence.**

**1.  Plaintiff was assaulted three times by members of a prison gang while housed in Unit 6 of TRCI.**

On January 30, 2018, plaintiff was transferred to TRCI from another prison due to a security threat at that institution.  (2-SER-177, 179).  Prison officials had received "intel" that plaintiff "would be unable to walk mainline due to disrespecting a known affiliate of the Security Threat Group Paisas back in 2017."[2]  (4-SER-729).  Plaintiff was nervous about the transfer, because he was aware that the Paisas gang had ordered a "hit" on him.  (2-SER-171–72).  Despite his concerns, plaintiff did not inform anyone at TRCI about his history with Paisas.  (2-SER-177–79).

Plaintiff was assigned to Housing Unit 6 of TRCI.  (2-SER-179).  The day he arrived, he approached two members of the Paisas gang to see if there was still a "green light" for him to be attacked.  (2-SER-184, 247–48).  He was told "it was water under the bridge."  (2-SER-184, 248).  Nevertheless, the day after plaintiff's transfer, he was assaulted by an AIC who was a member of the Paisas group.  (2-SER-187).  The AIC hit plaintiff in the back of the head with a breakfast tray.  (2-SER-187).  Prison officials ordered the AIC to get on the

---

[2]  The Paisas gang is the largest "group" in the Oregon prison system, and members of the group reside in every facility in the state.  (2-SER-261; 3-SER-459–60).

ground and ordered plaintiff to stand against the wall. (2-SER-189–90). Both the assailant and plaintiff were taken to administrative housing units. (2-SER-190–91; 3-SER-347).

There are two processes by which an AIC can be placed in administrative housing—voluntary or involuntary. (3-SER-332–33). An AIC may not be held in involuntary administrative housing for more than six months without a hearing to determine whether it is necessary. (3-SER-333–34). A facility may place an AIC on a 30-day administrative hold for the purpose of conducting an investigation in the situation. (3-SER-358). Following the January assault, plaintiff was placed on a 30-day involuntary administrative hold. (4-SER-728). Prison staff requested that hold on the basis that "[t]he STG Group [Paisas] are continuing to assault [plaintiff], and make threats against him where ever he goes. There are no housing units at this time that he is able to walk on. We would like to review him for AHU for his own safety and security." (4-SER-728).

Plaintiff was released back to general population and placed in Housing Unit 6 on March 2, 2018. (2-SER-198–99). Although petitioner was nervous to go back to that unit, he did not say anything to the correctional staff, because "giving them any type of information [is] prohibited. You're labeled a snitch." (2-SER-200). He did, however, approach members of the Paisas group to

"resolve the situation," and was told nothing would happen to him.  (2-SER-201–02).

The following night, March 3, 2018, two members of the Paisas gang ran up behind plaintiff and began punching him.  (2-SER-203; 3-SER -212; 4-SER-727).  According to plaintiff, the assault was "unexpected" and he "didn't even know these people."  (2-SER-211).  Correctional Officers reported that there was a fight over the prison's radio system and broke up the fight by deploying a "short burst of OC spray."  (3-SER-305, 313; 4-SER-727).  A March 2018 SSTIR[3] report stated that plaintiff had "disrespected a Paisa and now there is a green light on him where ever [*sic*.] he goes."  (4-SER-726).  Because plaintiff had fought back, he was issued a misconduct report and found in violation of Inmate Assault I.  (4-SER-729).

Plaintiff was again placed in involuntary administrative segregation for his own protection.  The request for administrative housing stated that plaintiff was considered "a target to all who are documented as members of the Security Threat Group Paisas," and that "his likelihood of success in General Population is little to none."  (4-SER-729).  The report also indicated that plaintiff "wants ODOC to place him back out into any general population housing unit so he can

---

[3]      SSTIR stands for "suspected security threat intelligence report." (3-SER-462).

show us that he will get assaulted. He has done this in the past by walking up to any STG hispanic group and immediately [*sic.*] disrespecting them so they will engage him physically." (4-SER-730). The report indicated that this had been plaintiff's "manipulation tactic strategy, to create a lawsuit against staff and ODOC for some time." (4-SER-730).

On June 7, 2018, plaintiff was released from segregation and was again assigned to Housing Unit 6. (2-SER-230). That same day, he was attacked by three members of the Paisas gang. (2-SER-233–34; 3-SER-406–07). One AIC was armed with a makeshift blade and attempted to cut plaintiff. (2-SER-235–36).

## 2. Plaintiff filed a grievance about his housing placement in response to the March 3 incident.

Following the March 3 assault, plaintiff filed a grievance against defendant Bowser, the superintendent of TRCI, claiming that he had an "obligation to provide appropriate housing for high risk/high alert prisoners" and had failed to "follow policy and procedure." (4-SER-738). In response to his grievance, prison officials stated that plaintiff "currently [did] not have any restrictions that would prevent [him] from being housed on any unit at TRCI in general population." (4-SER-737). The response informed plaintiff that, if he had a conflict that has not been documented, he should "complete an inmate conflict form to be reviewed," and if he felt he could not be housed safely, he

could "request voluntary administrative segregation housing or request to be reviewed for housing on AHU, the Administrative Housing Unit." (4-SER-737).

Plaintiff filed a grievance appeal, and Superintendent Bowser responded. (4-SER-735–36). Superintendent Bowser stated that plaintiff had "no documented conflicts at TRCI," and it "appears [plaintiff] may have created issues with a security threat group." (4-SER-735). The response stated that "[g]roups do not qualify as a conflict and will not keep you from being assigned to any housing unit at TRCI." (4-SER-735); *see also* 2-SER-225–26; 3-SER-386). Superintendent Bowser explained that there must be a specific safety issue with a known AIC to be considered a "documented conflict." (3-SER-386–87; *see also* 3-SER-430 (Assistant Superintendent Jackson's testimony that conflicts must involve specific people, not groups)). That is so because it is "virtually impossible for groups not to intermix" in the prison environment. (3-SER-387). Plaintiff filed a second-level grievance appeal; in response, the Eastside Institutions Administrator "concur[red] with the response from Superintendent Bowser." (4-SER-733–34).

### 3. Defendants testified at trial about their knowledge, or lack of knowledge, regarding threats to plaintiff's safety.

Each of the four named defendants testified at trial about what they knew regarding the threat to plaintiff's safety. Defendant Chambers was hired as the

8

security threat manager lieutenant (STM lieutenant) at TRCI on May 15, 2018.

(4-SER-550). She recalled seeing plaintiff in segregation while touring TRCI

sometime between her start date and June 7, 2018, when he was released back

to general population. (4-SER-566–67). Plaintiff was "extremely belligerent

and going off on an STM lieutenant that [she] was touring with." (4-SER-567).

She later learned that plaintiff was in segregation due to his involvement in

some assaults. (4-SER-567–68). Following the June 2018 assault, Chambers

began investigating and determined that, at that point, plaintiff was "considered

a target to all who are documented as member of the security threat group

Paisas" and that he would not likely have success in general population in any

ODOC facility. (4-SER-592–93). Chambers requested that plaintiff be

transferred out of TRCI in April 2019. (4-SER-595).

     Defendant Jones worked as the operations manager of the office of

population management for the Oregon Department of Corrections at the

relevant time period. (3-SER-326–27). Part of his job was to manage high-risk

prisoners, and to review those in need of protective custody through voluntary

or involuntary administrative housing. (3-SER-328–29). Jones testified that

the assaults involving plaintiff were not something that he would have been

involved with, as those are typically dealt with at an institutional level. (3-SER-

361). He explained that he only becomes involved when an institution has

mitigated their housing options and is seeking long-term administrative segregation. (3-SER-361). Jones would not have reviewed the February 2018 request for administrative housing, because any request marked "involuntary" is sent to him only after the six-month hearing has been conducted. (3-SER-345–46). Thus, he would not see a request for a 30-day administrative hold. (3-SER-345–46). Jones first became aware that TRCI had felt they had "exhausted all their housing options" for plaintiff in 2019. (3-SER-336).

Defendant Jackson, the then-acting Assistant Superintendent of TRCI, testified that, after an AIC is placed on an administrative hold, it is incumbent on the AIC to cooperate with the ensuing investigation if the AIC believes he needs further protection. (3-SER-458–59). Thus, while the request for the 30-day hold indicated that the "STG group Paisas are continuing to assault [plaintiff]" and "make threats against him wherever he goes," the third-party adjudicator would need corroborating evidence before approving plaintiff's placement in involuntary administrative housing for an extended time period. (3-SER-459–60, 3-SER-479–80). But because plaintiff refused to cooperate, TRCI staff "obviously didn't find enough information to substantiate holding him." (3-SER-479). Jackson explained that, without plaintiff's help, "it's almost impossible to prove without multiple incidents." (3-SER-480). After

the third incident, TRCI were able to "make out a case for [plaintiff] because he wasn't making a case for himself." (3-SER-480).

Defendant Bowser, the then-acting Superintendent of TRCI, testified that part of his role was to review and sign requests for administrative housing. (3-SER-373). He reviewed and signed the February 2018 request for a 30-day administrative hold for plaintiff. (3-SER-373). Bowser could not recall specifically why he recommended only 30 days in this case, but he explained that, "as a superintendent, I would try to minimize time" in administrative housing, and "would rather find other solutions than isolating someone in a cell." (3-SER-377–78). He was not involved in the decision to release plaintiff back to Unit 6 following the 30-day hold. (3-SER-381).

Although Superintendent Bowser often heard reports of AIC assaults over the institution's radio system, he did not get specific information about such assaults unless they resulted in significant injuries to AICs, staff injuries, or involved use of force. (3-SER-390–91). Barring those situations, Superintendent Bowser did not ever contact an individual AIC to get his side of the story. (3-SER-398). Bowser was not told that staff members were placing plaintiff back in Unit 6 following repeated assaults in that unit. (3-SER-402). He did not personally request administrative housing for plaintiff or a transfer

to another facility, explaining that "[i]t just wasn't brought to [his] attention that that was necessary." (3-SER-403).

**B.      Plaintiff filed a renewed motion for judgment as a matter of law.**

Following the jury's verdict, plaintiff filed a renewed motion for judgment as a matter of law. He argued that (1) the court need not determine the credibility of the witnesses to resolve liability in the case; (2) the only conclusion supported by the evidence was that defendants were on notice that plaintiff was at serious risk of harm and were deliberately indifferent to that harm; and (3) defendants failed to put on substantial evidence to support a verdict in their favor. (2-SER-19–27).

The district court denied the motion. (1-SER-2–8). It disagreed with plaintiff's assertion that the only conclusion that could be drawn from the evidence supported plaintiff's claims. In the court's view, plaintiff ignored contrary evidence introduced at trial that could have led the jury to make other reasonable inferences. For example, given the testimony that housing populations are in "constant flux," the jury could have determined that defendants thought any threat to plaintiff had dissipated during the intervening time between attacks. (1-SER-6). And the jury could also reasonably find that defendants subjectively lacked awareness of the threat to plaintiff's physical safety. (1-SER-6). The district court explained that plaintiff's arguments were

"illustrations of how the jury *could have read* the evidence in his favor. But a jury already considered the evidence and reached a verdict." (1-SER-5 (emphasis in original)).

The district court declined to consider plaintiff's argument that defendants had failed to put on substantial evidence to support a verdict in their favor, observing that plaintiff had not raised that argument in his pre-verdict Rule 50(a) motion. (1-SER-6–7). However, the court addressed one component of plaintiff's argument that had been raised earlier—his objection to defendants' argument that plaintiff had not done enough to prevent the attacks himself. (1-SER-7). The court noted that courts are split as to whether comparative fault is applicable in § 1983 cases, but concluded that, either way, plaintiff was not entitled to judgment in his favor because the burden rested on plaintiff to prove each element of the claims by a preponderance of the evidence. (1-SER-7). Plaintiff had not demonstrated a basis for the court to disturb the jury's verdict finding that plaintiff had not satisfied his burden of proof. (1-SER-7).

## SUMMARY OF ARGUMENT

The district court correctly denied plaintiff's renewed motion for judgment as a matter of law. Viewing the evidence in the light most favorable to defendants, a jury could reasonably find that they were not subjectively

13

aware of the risk to plaintiff's safety, or that defendants' actions objectively violated plaintiff's constitutional rights. Thus, there is no basis to disturb the jury's verdict in defendants' favor, and the resulting judgment should be affirmed.

## STANDARD OF REVIEW

This court reviews *de novo* the district court's denial of a motion for judgment as a matter of law. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). In so doing, this court does not weigh the evidence or make credibility determinations; the evidence must be viewed in the light most favorable to the non-moving parties, with all reasonable inferences drawn in their favor. *Id.* The "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Id.* (citation and internal quotation marks omitted). "A renewed motion for judgment as a matter of law should be granted if the evidence permits only one conclusion and that conclusion is contrary to the jury's verdict." *Martin v. California Dept. of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009), *cert. den.*, 558 U.S. 880 (2009).

14

## ARGUMENT

An AICs right to be free from cruel and unusual punishment under the Eighth Amendment may be violated based on a prison official's failure to protect the AIC from harm. To prevail on a failure-to-protect claim, an AIC must present facts that satisfy a two-part test: (1) that the alleged deprivation was, objectively, sufficiently serious, and (2) that the prison official was, subjectively, deliberately indifferent to the prisoner's safety or acted with "a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 833–34, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). Under the first prong, an AIC must show that he was placed in conditions that posed a substantial risk of serious harm. *Id*. at 834. The second prong requires "more than ordinary lack of due care for the prisoner's interest or safety." *Id*. at 835 (quotation omitted). To prove deliberate indifference, an AIC must show that the prison official knew of and disregarded an excessive risk to inmate safety. *Id*. at 837.

The deliberate indifference standard requires considerably more than mere negligence, and not every injury will translate to constitutional liability. *Id.* at 833–834. As the United States Supreme Court has observed, "[p]risons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393

(1984). "Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others." *Id.* As a result, the applicable legal standards must be applied to prison life as it exists and as prison officials have the capacity to influence it, not to an "idealized vision of prison life." *Berg v. Kinchloe,* 794 F.2d 457, 462 (9th Cir. 1986). "Prison administrators * * * should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The choice of measures to prevent violence and maintain safety is a difficult one, not readily susceptible to judicial review, and should normally be left to prison officials. *See Whitley v. Albers,* 475 U.S. 312, 321–322, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).

The evidence in this case was sufficient to allow a reasonable jury to find for defendants. To prove deliberate indifference, plaintiff had to show that defendants acted, or failed to act, in a manner that put plaintiff at substantial risk of suffering serious harm, and that they did so with a subjective awareness of that risk. *See* 4-SER-630 (jury instructions). Plaintiff's claim centered on

defendants' failure to protect him from being assaulted by members of the Paisas group in March and June of 2018. Specifically, he faulted defendants for continuing to place him back in Unit 6 following being assaulted and spending time in administrative segregation. But the jury could reasonably conclude that defendants were either unaware of the risk to plaintiff's safety, or that they took appropriate reasonable measures to protect him.

First, the jury could reasonably conclude that defendants lacked a subjective awareness that housing plaintiff in Unit 6 put him at risk of harm. There was no evidence to show that defendants should have been aware that plaintiff's safety was at risk by virtue of his housing placements. None of the defendants were directly responsible for choosing plaintiff's housing, and there is no basis in the record to believe that they were aware that plaintiff had been re-housed in Unit 6 following his time in administrative segregation.

And although there was an indication in the administrative-hold requests that plaintiff would be at risk in general population, nothing specified that the risk was any greater with respect to Unit 6. Indeed, the evidence showed that the Paisas gang is widespread in the Oregon prison system, and that members of the group could reside in every unit of every facility in the state—including long-term administrative housing at TRCI. As Superintendent Bowser explained when he denied plaintiff's grievance, it is "virtually impossible for

groups not to intermix" in the prison environment. (3-SER-387). And the population within each unit was in a constant state of flux. Assistant Superintendent Jackson testified that the population within the facility is "constantly changing" and "a unit could change over * * * by half of the population in a month." (3-SER-467). For that reason, it did not shock him that plaintiff was assigned back to Unit 6 following his time in administrative segregation. (3-SER-467). Given that evidence, the jury could reasonably conclude that defendants lacked a subjective awareness that plaintiff was at risk due to his placement in Unit 6 specifically.

Second, the jury could reasonably conclude that defendants took reasonable measures to ensure plaintiff's safety following the January and March assaults by placing him on administrative holds. Both incidents resulted in plaintiff being placed in involuntary segregation for 30 days, to allow for the prison officials to conduct investigations into the assaults and evaluate the risk to plaintiff's safety. The evidence permits a finding that plaintiff did not want to be held in administrative segregation, as he never requested it and refused to cooperate in the ensuing investigations. Assistant Superintendent Jackson explained that, without plaintiff's cooperation, the staff had no credible basis to request long-term administrative segregation until there were multiple incidents. (3-SER-459–60). And the information provided to Bowser and Jackson was

that plaintiff had no known conflicts with specific AICs, only that he had a dispute with Paisas generally. The evidence suggested that it would be impossible to ensure that plaintiff was separated from all members of Paisas, even in the administrative housing unit. But even if that was a better housing option, plaintiff would have needed to cooperate in the internal investigations to justify long-term administrative segregation without multiple incidents. Under the circumstances, the jury could conclude that plaintiff failed to prove that defendants disregarded a known and excessive risk to plaintiff's safety.

In sum, the evidence in this case is susceptible to different findings and does not compel only a verdict in plaintiff's favor. The jury could reasonably conclude that plaintiff failed to meet his burden of proof in establishing the claims. Thus, the trial court correctly denied plaintiff's renewed motion for judgment as a matter of law.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

19

## CONCLUSION

The district court did not err in denying plaintiff's renewed motion for

judgement as a matter of law, and the resulting judgment should be affirmed.

Respectfully submitted,

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General


/s/ Joanna Hershey

JOANNA HERSHEY
Senior Assistant Attorney General
joanna.hershey@doj.oregon.gov

Attorneys for Defendants-Appellees
Troy Bowser, Superintendent, et al

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellees' Brief is proportionately spaced, has a typeface of 14 points or more and contains 3,870 words.

DATED:  June 2, 2025

/s/  Joanna Hershey
JOANNA HERSHEY
Senior Assistant Attorney General
joanna.hershey@doj.oregon.gov

Attorney for Defendants-Appellees
Troy Bowser, Superintendent, et al

DAN RAYFIELD, #064790
Attorney General
BENJAMIN GUTMAN  #160599
Solicitor General
JOANNA HERSHEY  #152665
Senior Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellees

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| HENRY ALEXANDER TOWNSEND, | U.S.C.A. No. 25-147 |
| Plaintiff-Appellant, | STATEMENT OF RELATED CASES |
| v. | |
| TROY BOWSER, Superintendent; JOHN RUMSEY, Security; NAIMA N. CHAMBERS, STM, Lt.; CAMERON BAUER, STM; ANN AMSBERRY, Supt.; GREGORY JONES, Office of Population Management; KEVIN JACKSON, Assistant Supt. Security, | |
| Defendants-Appellees. | |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of

Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellees,

certifies that she has no knowledge of any related cases pending in this court.

/ / / / /

/ / / / /

/ / / / /

Respectfully submitted,

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General


/s/  Joanna Hershey
_____

JOANNA HERSHEY
Senior Assistant Attorney General
joanna.hershey@doj.oregon.gov

Attorneys for Defendants-Appellees
Troy Bowser, Superintendent, et al

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2025, I directed the Appellees' Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Henry Alexander Townsend
SID #14258900
Snake River Correctional Institution
777 Stanton Boulevard
Ontario, OR  97914

/s/  Joanna Hershey
_____
JOANNA HERSHEY
Senior Assistant Attorney General
joanna.hershey@doj.oregon.gov

Attorney for Defendants-Appellees
Troy Bowser, Superintendent, et al

JH8:bmg/991775747